659 P.2d 1289

**The STATE of Arizona, Appellee,**

v.

**Robert Lopez SANCHEZ, Appellant.**

**No. 2 CA–CR 2643.**

Court of Appeals of Arizona, Division 2.

Sept. 27, 1982.

Rehearing Denied Oct. 25, 1982.

Review Granted Nov. 23, 1982.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Frederic J. Dardis, Pima County Public Defender by Lawrence H. Fleischman, Deputy Public Defender, Tucson, for appellant.

## OPINION

BIRDSALL, Judge.

The appellant, Robert Lopez Sanchez, was convicted of two counts of child molesting and two counts of sexual conduct with a minor under 15. He was sentenced to the presumptive term of seven years in prison for each count, the terms to run concurrently.

The appellant contends that the admission of testimony of a psychologist who had examined him in connection with proceedings under Rule 11 of the Arizona Rules of Criminal Procedure, 17 A.R.S., constituted fundamental error. We disagree.

The facts simply stated are as follows. On September 30 and October 1, 1981, the appellant picked up his 14 year old niece and stepdaughter, Yolanda Sanchez, at school. He took her into the desert and forced her to have sexual intercourse with him. The fact that these acts occurred is not disputed.

The issue at trial was whether the appellant was sane during the performance of the acts. Starting in 1980 he frequently entered into "trancelike" states, during which he would stare at objects and utter strange animal-like noises. The appellant's expert witness, Donald Smith, a counselor, testified that in his opinion the appellant was insane at the time the acts were com-

mitted. The counselor testified that the appellant suffered from a dissociative disorder known as psychogenic fugue. A psychogenic fugue state is often characterized by changes in personality, fainting spells, flat expression, speech loss, and poor or absent memory recall.

Dr. Cynthia Ginnetti, a psychologist at the Court Clinic who performed a preliminary examination for the court, testified that she believed the appellant did not suffer from a dissociative disorder and was legally sane at the time he committed the acts. During the course of prosecution questions, Dr. Ginnetti offered the following series of answers:

"Q. Okay. Did you question the defendant about these sexual acts with Yolanda Sanchez?

A. That was part of the Rule 11 evaluation.

Q. Could he give you any information concerning those acts?

A. Yes, he could.

Q. Do you remember what he could tell you about those?

A. Yes, I do.

I didn't realize that I was permitted to testify as to that material.

Q. Yes. Tell us what he told you about that.

A. Mr. Sanchez told me that he did have intercourse with Yolanda in the desert; that this had happened approximately one [sic] weekly from July through October; and that—well, that's essentially it.

He described using some cardboard that Yolanda would lay on in the desert.

Q. Did he describe her reaction to doing these things?

A. He described that she appeared unwilling, frightened.

Q. Did he go into any other details concerning these events?

A. No. Mr. Sanchez was depressed, embarrassed, and uncomfortable with being there.

Q. Did he seem to be anxious to talk about it?

A. No, he was not anxious to talk about it.

Q. Was he reluctant to talk about it?

A. Yes. It was difficult for him to talk about it."

The issue on appeal is whether the admission into evidence of the preceding testimony by Dr. Ginnetti amounted to fundamental error, there being no objection to this testimony at trial. We hold that it did not. Although the testimony in question violated Rule 11.7(b)(1), its admission into evidence did not constitute fundamental error requiring reversal.

■ Rule 11.7(b)(1) of the Arizona Rules of Criminal Procedure states that:

"No statement of the defendant obtained under these provisions, or evidence resulting therefrom, concerning the events which form the basis of the charges against him shall be admissible at the trial of guilt or innocence, or at any subsequent proceeding to determine guilt or innocence, without his consent."

We initially consider whether the Rule 11.7 proscriptions apply to this preliminary mental examination. Following the appellant's motion for a Rule 11 mental examination, the trial court by minute entry ordered him to submit to a preliminary examination by the Court Clinic. The Court Clinic would then advise the trial court whether a formal Rule 11 examination was needed. Although the statements which form the basis of the contested testimony occurred at the preliminary examination rather than at a formal Rule 11 examination, we feel both situations warrant application of the Rule 11.7 proscriptions. Where the court ordered a defendant to submit to a mental examination following a Rule 11 motion, it would be fundamentally unfair to allow the examiner to testify to the defendant's incriminating statements. *See State v. Evans,* 104 Ariz. 434, 436, 454 P.2d 976, 978 (1969).

■ Having determined that Rule 11.7 proscriptions apply to this preliminary mental examination, we find that the admission into evidence of the above-quoted testimony

of Dr. Ginnetti clearly violated Rule 11.-7(b)(1). First, the testimony contains statements of the appellant. The prosecution asked Dr. Ginnetti to recite what the appellant had told her. Second, the appellant's statements were obtained while Dr. Ginnetti examined him under the provisions of Rule 11. Third, his statements concerned the events which form the basis of the charges against him. The testimony recounts the appellant's statements to the effect that he had intercourse with Yolanda in the desert, that the acts occurred weekly from July through October, that Yolanda would lie on cardboard, and that Yolanda appeared unwilling and frightened. Finally, the statements were admitted into evidence at the trial of guilt or innocence of the appellant without his consent. The Arizona Supreme Court has stated that the failure of the defendant to object to the introduction of the evidence is an insufficient basis from which to infer consent. The record must show that the defendant affirmatively consented. *See State v. Magby,* 113 Ariz. 345, 554 P.2d 1272 (1976). Thus, the introduction of Dr. Ginnetti's testimony quoted above was error. The state concedes as much in its answering brief on appeal.

The remaining question is whether the error is harmless or requires reversal. Arizona courts in the past have found errors to be harmless when improperly admitted testimony was cumulative to other evidence already properly admitted. *See State v. Ramirez,* 116 Ariz. 259, 569 P.2d 201 (1977); *State v. Freeman,* 114 Ariz. 32, 559 P.2d 152 (1976); *State v. Magby, supra; State v. Torres,* 127 Ariz. 309, 620 P.2d 224 (App.1980).

In the case *sub judice,* the factual evidence contained in the improperly admitted testimony was merely cumulative of previous properly admitted testimony. Although it did not specifically refer to the weekly occurrence of the acts between July and October, the earlier testimony demonstrated that the acts extended from the summer of 1980 until October, 1981, and recurred at frequent intervals.

The appellant points out that the improperly admitted testimony suggests that he could recall the events himself. He argues that evidence showing that he could recall the events himself tends to refute his insanity defense based on a psychogenic fugue state. Memory loss is a primary element of psychogenic fugue state.

The Arizona Supreme Court faced a similar problem in *State v. Freeman, supra.* In that case, the improperly admitted testimony contained admissions by the defendant concerning his mental state. Those admissions were inconsistent with the defendant's insanity defense. The court found those admissions harmless since the evidence was cumulative of other testimony concerning the defendant's mental state.

In the present case we find ample evidence other than the improperly admitted testimony to indicate that the appellant could remember the events in question. On direct examination by the state, a sheriff's deputy testified concerning a detailed confession given by the appellant. In that confession offered on October 2, 1981, the appellant indicated his ability to recall details of the events in question. The deputy's testimony shows much more effectively than Dr. Ginnetti's testimony the extent of the appellant's memory of the events. In the confession, he remembered that he went to a desert area and had sexual intercourse with Yolanda, that she fought with him, that she struggled, that she cried, that he took cardboard and Yolanda lay on it, that he took Yolanda's clothes off, that the events recurred, that he worried about getting Yolanda pregnant, and that he did not use a birth control device.

In addition, despite the appellant's contention that the improperly admitted evidence rebuts his insanity defense, we do not find the limited recall suggested in the improperly admitted testimony to be inconsistent with the testimony of his expert witness that the appellant had very poor recall. Some memory recall may be consistent with a psychogenic fugue state. The expert witness, under examination by defense counsel, admitted that the appellant could have

some recall and still be under a psychogenic fugue state. The appellant's statements to Dr. Ginnetti may have indicated only poor recall. He remembered only four things:

1) That contacts occurred at weekly intervals;
2) That Yolanda would lie on a piece of cardboard;
3) That Yolanda was frightened;
4) That they had intercourse.

Indeed the testimony shows that the appellant did not go into detail regarding the events, allowing at least the inference that he could not offer details due to a lack of recall. Such an inference would bolster, not weaken, his insanity defense.

For the foregoing reasons we find the error to be harmless beyond a reasonable doubt. We need not address the appellant's contention that his Fifth and Sixth Amendment rights were violated because no *Miranda* warnings or advice of counsel occurred prior to his interview with Dr. Ginnetti. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Marovich,* 109 Ariz. 45, 504 P.2d 1268 (1973).

■ We next address the issue, raised *sua sponte* by this court,[1] whether the failure of the trial court to submit "not guilty by reason of insanity" verdict forms amounts to fundamental error. The trial court submitted only "guilty" or "not guilty" verdict forms. Neither party objected to this procedure, although the better practice would require verdict forms showing all possible verdicts the jury might return. *See, e.g., State v. Griffith,* 92 Ariz. 273, 376 P.2d 134 (1962); *West v. State,* 24 Ariz. 237, 208 P. 412 (1922); *State v. Reynolds,* 9 Ariz.App. 131, 449 P.2d 968 (1969).

The appellant contends that the trial court did not properly instruct the jury that they had a duty to find him not guilty if they found him to be insane. We find the instructions to be adequately clear. The trial court informed the jury that if they found the appellant was insane he would not be responsible for his criminal conduct. A "not guilty" verdict would be the only logical result.

The appellant further argues that Rule 23.2(b), Arizona Rules of Criminal Procedure, 17 A.R.S., requires the trial court to submit "not guilty by reason of insanity" verdict forms, and that the forms actually submitted failed to respond to every material issue in the case, i.e., the insanity defense.

The case of *West v. State,* 24 Ariz. 237, 208 P. 412 (1922), disposes of the appellant's contentions. In that case, the Arizona Supreme Court decided that the failure to submit as many verdict forms as permitted by the facts of a case constitutes reversible error only where the omission prejudiced the defendant's rights. The court found that the failure to submit a "not guilty by reason of insanity" verdict form did not prejudice the defendant since the purpose of such a form is to enable the court to restrain and confine the defendant and thus protect society, not to benefit the defendant. The court noted that as long as the jury knew that an insanity conclusion should result in a "not guilty" finding, then the jury would be equally as willing to return a "not guilty" verdict as a "not guilty by reason of insanity" verdict.

In the present case, the failure to submit a "not guilty by reason of insanity" verdict form did not prejudice the appellant's rights. The verdict forms as submitted did respond to substantially every issue in the case since the jury could take the issue of the appellant's insanity into account in returning a verdict of guilty or not guilty.

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.

1. Upon discovery of this issue, we required the parties to submit supplemental briefs.